FILED IN MY OFFICE
DISTRICT COURT CLERK
9/14/2015 2:13:35 PM
STEPHEN T. PACHECO
Avalita Kaltenbach

STATE OF NEW MEXICO
FIRST JUDICIAL DISTRICT
COUNTY OF SANTA FE

JOSEPH WILSON,

     Plaintiff,

v.                                        No. D-101-CV-2015-01994

PAUL HINKS, RICHARD WESTBURY,
SYMBION POWER, HART INTERNATIONAL,
and its successor, CHELSEA HOLDINGS,

     Defendants.


SYMBION POWER LLC,

     Counterclaimant,

v.

JOSEPH WILSON,

     Counterclaim-Defendant.

### <u>ANSWER AND COUNTERCLAIM OF DEFENDANT SYMBION POWER LLC</u>

     Defendant and Counterclaimant Symbion Power LLC, by its attorneys, Montgomery &
Andrews, for its answer to the Complaint of Plaintiff and Counter-Defendant Joseph Wilson
("Plaintiff" or "Wilson") and for its counterclaims alleges as follows, upon knowledge with
respect to itself and its own acts, and upon information and belief with respect to all other
matters:

     1.     States that it is without sufficient information either to admit or deny the
allegations in paragraph 1 of the Complaint and therefore denies them on that basis.

     2.     Denies the allegations in paragraph 2 of the Complaint, except admits that Paul
Hinks is a citizen of the United Kingdom and a resident of New York, New York.

Exhibit B

3.      Denies the allegations in paragraph 3 of the Complaint, except admits that Richard Westbury is a citizen of the United Kingdom and a resident of Cyprus.

4.      Denies the allegations in paragraph 4 of the Complaint, except admits that Symbion Power LLC is organized under the laws of Delaware and has its principal place of business in Washington, D.C., United States of America.

5.      Denies the allegations in paragraphs 5, 6 and 7 of the Complaint.

6.      Answering paragraph 8 of the Complaint, restates its answers to the allegations of paragraphs 1 through 7 of the Complaint as if fully set forth herein.

7.      States that it is without sufficient information either to admit or deny the allegations in paragraphs 9, 10, 11, 12, 13 and 14 of the Complaint and therefore denies them on that basis.

8.       Denies the allegations in paragraph 15 of the Complaint, except admits that Paul Hinks is the founder of Symbion Power LLC and serves as its Chief Executive Officer.

9.       Denies the allegations in paragraph 16 of the Complaint, except admits that Richard Westbury  serves as the Chairman of Symbion Power Holdings LLC, a limited liability corporation organized under the laws of Delaware which has its principal place of business in Washington, D.C., United States of America.

10.      Denies the allegations in paragraph 17 of the Complaint, except admits that Symbion Power LLC is organized under the laws of Delaware, has its principal place of business in Washington, D.C., United States of America, and that it is an American company engaged in the construction and operation of electric infrastructure in difficult areas of the world, as well as other business activities.

11.     States that it is without sufficient information either to admit or deny the allegations in paragraph 18 of the Complaint and therefore denies them on that basis.

12.     Denies the allegations in paragraph 19 of the Complaint, except admits that sometime in or about early 2009, Wilson and Paul Hinks met in Washington, D.C., and Wilson later expressed interest in becoming employed as a consultant by Symbion Power LLC.

13.     Denies the allegations in paragraph 20 of the Complaint, except admits that at various times during 2009, Wilson discussed with Paul Hinks and others the business activities and corporate structure of Symbion Power LLC.

14.     Denies the allegations in paragraph 21 of the Complaint, except admits that at various times from 2009 to date, Paul Hinks and Richard Westbury acted as agents and representatives of Symbion Power LLC in regards to their dealings with Wilson.

15.     Denies the allegations in paragraph 22 of the Complaint, except admits that at various times Paul Hinks and Richard Westbury had discussions with Wilson concerning the business and operations of Symbion Power LLC.

16.     Denies the allegations in paragraph 23 of the Complaint.

17.     Denies the allegations in paragraph 24 of the Complaint, except admits that at various times Paul Hinks and Richard Westbury had discussions with Wilson concerning the business and operations of Symbion Power LLC.

18.     Denies the allegations in paragraph 25 of the Complaint, except admits that, although Wilson never held any management position with Symbion Power LLC nor exercised any specific management authority or powers, he was anxious to be given a title and for that reason it was agreed at various times to publicly identify Wilson as a member of the "Symbion Power Advisory Board," as a "Director of Symbion Power," and as the "Chairman of Symbion

Power Africa," although such positions did not formally exist and carried no specific duties or functions.  Wilson never attended any of the board meetings of Symbion Power LLC, was never appointed to its management committee, and an Advisory Board was ultimately never established.

19.     Denies the allegations in paragraphs 26, 27 and 28 of the Complaint, except admits that Wilson as part of his duties to Symbion Power LLC agreed to assist it in obtaining business in Africa and as needed in management matters.

20.     Denies the allegations in paragraphs 29 and 30 of the Complaint, except admits that in Santa Fe, New Mexico in or about June 2009, Paul Hinks orally agreed on behalf of Symbion Power LLC to employ Wilson as a consultant to assist Symbion in obtaining business in Africa and as needed in management matters on certain terms that included compensation and the payment of approved business expenses.

21.     Denies the allegations in paragraphs 31 and 32 of the Complaint, except admits that in or about June 2009, Wilson began to perform certain services in accordance with his agreement with Symbion Power LLC, for which Symbion Power LLC began paying Wilson compensation and business expenses in accordance with that agreement.

22.     Denies the allegations in paragraph 33 of the Complaint, except admits that Paul Hinks sent Wilson an e-mail dated April 10, 2012, and refers to that e-mail for a full and complete statement of its contents.

23.     Denies the allegations in paragraphs 34, 35 36, 37, 38, 39 and 40 of the Complaint.

24.     Answering paragraph 41 of the Complaint, restates its answers to the allegations of paragraphs 1 through 40 of the Complaint as if fully set forth herein.

25.     Denies the allegations in paragraphs 42, 43, 44 and 45 of the Complaint.

26.     Answering paragraph 46 of the Complaint, restates its answers to the allegations of paragraphs 1 through 45 of the Complaint as if fully set forth herein.

27.     Denies the allegations in paragraph 47 of the Complaint.

28.     Denies the allegations in paragraph 48 of the Complaint, except admits that in Santa Fe, New Mexico in or about June 2009, Paul Hinks orally agreed on behalf of Symbion Power LLC to employ Wilson as a consultant to assist Symbion in obtaining business in Africa and as needed in management matters on certain terms that included compensation and the payment of approved business expenses.

29.     Denies the allegations in paragraphs 49, 50, 51 and 52 of the Complaint.

30.     Answering paragraph 53 of the Complaint, restates its answers to the allegations of paragraphs 1 through 52 of the Complaint as if fully set forth herein.

31.     Denies the allegations in paragraphs 54, 55, 56 and 57 of the Complaint.

## ADDITIONAL FACTS

1.     Defendant and Counterclaimant Symbion Power LLC is a Delaware limited liability company with its principal place of business in Washington, D.C.  Symbion Power LLC has one member, Symbion Power Holdings LLC, which is a Delaware limited liability company with its principal place of business in Washington, D.C.  The Chief Executive Officer of Symbion Power LLC is Paul Hinks ("Hinks"), a resident of New York City and a citizen of the United Kingdom.

2.     Symbion Power LLC is a company engaged in the construction and operation of electric infrastructure in difficult areas of the world.  Paul Hinks founded Symbion Power LLC in 2005 specifically to undertake electrical reconstruction work in Iraq and Afghanistan under contracts with or funded by the U.S. government.  In Iraq, from 2006 to 2009, Symbion Power

LLC performed with distinction as a direct, fixed-price contractor on nine Prime Contracts for the U.S. Department of Defense, successfully building electric infrastructure systems in the most conflict-ridden parts of Iraq.  Symbion Power LLC's nine projects included building a 300km 400kV transmission line project from Baiji to Haditha and onwards through the Al Anbar desert to Al Qaim near the Syrian border during the very difficult period of 2006-07, when most of the work took place.  For its work, Symbion has received praise from its military clients, including the U.S. Marine Corps Commander in Al Anbar.  In an April 2008 report, the Special Inspector General for Iraq Reconstruction ranked Symbion Power LLC as one of the top ten U.S. government contractors in Iraq.

3.     Symbion Power LLC's current operations have focused on less-developed parts of the world in need of electric infrastructure, particularly Africa, where Paul Hinks began his career in the power construction business in the early 1980s.  In 2010, Symbion Power LLC-led joint ventures were awarded nearly $100 million in contracts funded by the U.S. Millennium Challenge Corporation to build transmission and distribution lines in Tanzania.  At the request of the Tanzanian government, Symbion Power LLC has significantly increased Tanzania's power generation resources by commissioning three power stations and developing a 400MW gas fired power plant and a 650km transmission line in the southern region of Tanzania in a Public Private Partnership with the state owned utility TANESCO.  Symbion Power LLC is expanding its business in other parts of Africa, and currently has power development projects underway in Rwanda, Kenya, Nigeria, Uganda, Madagascar and other countries.

4.     In or about early 2009, former Ambassador Joseph Wilson and Paul Hinks met in Washington, D.C., and later Wilson expressed interest in becoming employed as a consultant by Symbion Power LLC.  In telephone conversations with Hinks in Washington and elsewhere,

Wilson told Hinks that because of his experience in government as a U.S. diplomat, he could help Symbion Power LLC obtain business, particularly in Africa.  Hinks liked Wilson and felt that he could add value to the company, despite the expense of his services.  Also, Hinks greatly admired the important role Joe Wilson and his wife, Valerie Plame, played in bringing to light the truth about the issue of weapons of mass destruction in Iraq.

5.      Thereafter, in or about June 2009, Wilson invited Hinks to visit him at his home in Santa Fe, New Mexico, a State Hinks had never visited before or since.  At this meeting with Wilson in Santa Fe, Hinks orally agreed on behalf of Symbion Power LLC to employ Wilson as a consultant to assist Symbion in obtaining business in Africa and if called upon in management matters on the following terms:  (i) compensation of $20,000 per month; (ii) payment of expenses for travel on company business per prior agreement and travel in J Class (business); and (iii) potential payment of a success fee in an amount that would be discussed on a case by case basis if Wilson brought Symbion Power LLC a business opportunity it had not otherwise known about and the company succeeded with that particular deal.  The agreement was never put into a writing that was signed by the parties, and never had a term.  Accordingly, Symbion Power LLC's oral agreement to employ Wilson was at will, and could be terminated by either party at any time.

6.      Although Wilson never held any management position with Symbion Power LLC, nor exercised any specific management authority or powers, Wilson was anxious to be given an important title.  In subsequent discussions with Wilson, it was agreed at various times to publicly identify Wilson as a member of the "Symbion Power Advisory Board," as a "Director" of Symbion Power LLC, and as the "Chairman of Symbion Power Africa," although such positions did not formally exist and carried no specific duties, powers or functions.  Wilson was

never appointed to the management committee of Symbion Power LLC and he never attended any board meetings.  The titles were informal and conferred at his request to provide him with status in Washington, D.C. and in Africa.  Wilson never worked full time for Symbion and was engaged with other business activities, including oil deals, some of which he pursued after meeting contacts through his work for Symbion Power LLC.  He also undertook paid speaking events outside his employment with Symbion Power LLC.

7.      Symbion employed Wilson from in or about July 2009 to on or about December 1, 2014.  During this period Symbion paid Wilson a total of $1,454,512.31 in compensation and expenses.  All Symbion Power LLC's payments were made to JC Wilson International Ventures of Santa Fe, New Mexico, in accordance with invoices Wilson sent, or to Wilson directly.

8.      During the entire period of Wilson's employment with Symbion, he failed to deliver any new business for Symbion Power LLC in Africa or any other part of the world.  Aside from Wilson's failure to produce new business for Symbion Power LLC, from the very beginning, there were problems and disputes with Wilson over his excessive and often petty expense claims, his failure to comply with company policy on travel and expenses, his treatment of company employees, and his comportment in the office and with third parties on company business.  For example,

(i)      Wilson frequently refused to follow the company's policy to manage and control travel expenses by booking air travel and hotel accommodations by going through the company's staff who were charged with making plane and hotel bookings.  Instead, Wilson would frequently book his own air travel with airlines he chose primarily to maximize his frequent traveler benefit and qualify for free upgrades to First Class, and he booked reservations in his favored Washington, D.C. hotels, ultimately costing the

company tens of thousands of dollars in excessive travel expenses. Wilson often screamed at and abused in other ways the company's staff charged with making air and hotel bookings when they tried to intervene in his travel plans to save the company money.

(ii)     During times Wilson was in Washington, D.C. and using his office in the company's headquarters, he at times yelled at Symbion's Washington office staff when he was displeased, and on occasion acted inappropriately in other ways. On one occasion, Wilson joined three young female Symbion Power LLC staffers for lunch in a conference room, where he shocked them by single-handedly consuming an entire bottle of wine. It is not the practice of Symbion's staff in Washington to consume alcohol at lunchtimes.

(iii)    Wilson also acted inappropriately in dealings and meetings with third parties on matters of Symbion business. He would regularly make remarks to third parties that Paul Hinks worked for him, causing a number of people to refer to Wilson as the "boss" of Symbion Power LLC's founder and CEO. Paul Hinks was forced to admonish Wilson for this because it undermined the company's organizational structure and conveyed authority that Wilson did not have. At times, Wilson would claim credit for services he did not render for Symbion Power LLC. This included an appearance by then Secretary of State Hillary Clinton to tour a Symbion Power Plant in Dar es Salaam, Tanzania with Paul Hinks and speak at the event on the afternoon of June 13, 2011, following her visit to the U.S. Embassy in Tanzania to commemorate the 10th anniversary of its bombing by elements of al-Qaeda. Although Wilson was not present during this visit, he often inaccurately boasted that the Secretary of State decided to visit Symbion because of her

friendship with him.  In fact the visit was arranged by the U.S. Embassy in Tanzania and

the Millennium Challenge Corporation, of which the Secretary of State is Chair.  The

Millennium Challenge Corporation had earlier called Paul Hinks to request whether they

could propose the visit to the Secretary of State because there was a gap in her schedule

during the visit to commemorate the Embassy bombing.  Wilson played no role in asking

her to visit the power plant.

(iv)       On occasion, Wilson's efforts to cultivate powerful figures in Washington for his

own benefit have caused embarrassment to Symbion and its managers.  On November 10,

2009, Wilson sent an e-mail to Sid Blumenthal, a close associate of then Secretary of

State Hillary Clinton, asking him to deliver an e-mail message to the Secretary of State.

In his message, Wilson inaccurately informed Secretary Clinton that in addition to being

"a director of Symbion Power," he "may soon assume more direct responsibility for all of

Africa as Symbion expands there from its current operations. . . ."  Hinks did not learn

about the message until after it was sent.  When this message was recently released by the

State Department with other e-mails of Mrs. Clinton's, it led to utterly inaccurate

speculation in a certain sector of the press that Wilson's relationship with Secretary of

State Clinton had something to do with the U.S. Millennium Challenge Corporation

awarding Symbion Power LLC contracts to build transmission and distribution lines in

Tanzania, which in fact were won by Symbion Power LLC after an aggressively

competitive bidding process.  Wilson played no part in the bids for these projects and

Secretary Clinton was never involved in the procurement process.  Wilson regularly

boasted to Symbion staff, including Paul Hinks, that Secretary Clinton had wanted to

"speak in front of Joe Wilson's Power Plant."  However the visit was in no way linked to

Wilson.  Yet when media reports of former-Secretary Clinton's emails later suggested there was a connection, Wilson did not deny it, thereby allowing the falsehood to be left unaddressed and to further his self-aggrandizing agenda.

9.     Wilson has breached his duties to Symbion in more costly ways.  In or about June, 2009, shortly after his arrival at Symbion, Wilson introduced to Paul Hinks an individual named Robert Cabelly, whom Wilson described as an old friend from his days in government service.  Wilson represented that Cabelly was an expert on Africa who had worked with distinction for many years on African affairs in senior positions for the Department of State and the National Security Council, and that he was at the time a partner at a prestigious Washington consulting firm.  Wilson told Hinks he wanted Symbion to employ Cabelly, who could get Symbion business in Angola.  Hinks was convinced by what Wilson told him, and in reliance on Wilson's representations about Cabelly agreed in June 2009 to retain Cabelly's services at $15,000 a month to obtain work for Symbion Power LLC in Angola and elsewhere.  What Wilson then knew but willfully failed to tell Hinks was that his friend Cabelly had been indicted under seal by the U.S. Justice Department for violating U.S. economic sanctions against Sudan, using multiple passports and an offshore bank account to hide his activities, and other crimes.  Wilson also did not tell Hinks that he knew the Justice Department had seized Cabelly's passport and that Cabelly would be unable to travel to Angola or anywhere else.  Because of Wilson's duplicity, Cabelly was hired and on the payroll before Hinks learned these facts, which was after Cabelly's Federal indictment was unsealed on October 27, 2009.  Cabelly never obtained any work for Symbion Power LLC, and the money it paid him in reliance on Wilson's fraudulent misrepresentations and omissions was wasted.

10.     Although Wilson never produced or originated any new business for Symbion

Power LLC during the years it employed him, and he never invested or offered to invest money

in Symbion, he frequently made demands to be given equity in Symbion, referring to non-

existent "oral commitments" by Hinks and another Symbion executive.  Over the years, these

demands to be given equity in Symbion became more frequent and increased from an equity

interest of 5% to 10% and finally to 20% "of the power generation business" as Symbion Power

LLC became more successful in Africa.  Following one such demand by Wilson, Hinks sent him

an e-mail dated June 7, 2012, telling him that any discussion of "beneficial shareholding" in

Symbion had to await the resolution of an arbitration Symbion Power LLC was then involved

with and would have to involve "numerous people, some of whom are no longer with Hart and

all of whom hold the shares in Symbion through 3rd companies."  Wilson was not happy with

this response, and he replied with an e-mail to Hinks dated June 8, 2012 that demanded he be

given a "20% equity stake in Symbion Power Africa and a 10% equity position in the Power

Generation business," which he said "was simply to protect my family should something happen

to me and to clarify for all parties my status with Symbion."  Wilson gave Symbion until

"Monday, June 11" to comply, and if it failed to do so, he told Hinks he planned to quit and "to

inform my many Africa contacts and friends that I am no longer associated with Symbion" in a

manner he threatened would be "acrimonious."  Hinks responded with an e-mail dated June 11,

2012 that attempted to placate Wilson by reminding him that "we have maintained paying your

retainer despite the fact that you have done no work for us for a while now."

11.     Symbion Power LLC continued to pay Wilson his monthly fee despite the fact

that he was refusing to perform any services.  By in or about April 2013, Wilson had in word and

deed effectively renounced any duty to perform further services for Symbion Power LLC.  On

April 24, 2013, Wilson met Hinks in the Mayflower Hotel in Washington.  During this meeting,

Wilson made it clear that he refused to perform any further consulting services for Symbion as

required by the agreement, but that he still expected to be paid and repeated the non-existent

promises to grant him equity of 10% in Symbion Power Africa and 20% in "the power

generation business."  During the meeting, Wilson told Hinks, "You do not want to get into a

fight with me," and that "I can destroy Symbion."

12.     At the time Wilson uttered his threat to destroy Symbion Power LLC, Hinks

feared that Wilson would carry out his frequent threats to use his contacts and influence in

Washington and elsewhere to defame Symbion Power LLC in an attempt to destroy its prospects

of successfully completing negotiations on certain business opportunities and projects that were

then at critical stages.  Fearing Wilson's threats, Hinks caused Symbion Power LLC to defer

acting on its right to terminate Wilson's monthly payments of $20,000 per month, and to

continue making them until December 1, 2014, when the company ceased further payments.

13.     Following Symbion's termination of his monthly payment, Wilson continued

sending invoices to Symbion Power LLC without performing any services, and regularly made

threats in e-mails to Hinks of what he would do if his invoices were not paid.  In a message dated

February 2, 2015, Wilson told Hinks, "I would much prefer an amicable solution to an

acrimonious one."  In a message dated April 8, 2015, Wilson said, "I cannot imagine how you

think a fight with me is in your interests."  On July 31, 2015, Wilson carried out his threats by

causing his attorney to send Hinks a draft of the Complaint that he has now filed, asserting in it

the defamatory and demonstrably false claims, among others, that "Symbion is, on information

and belief, a group of corporations organized under the laws of Cyprus" (Complaint, ¶ 4); that

"The Defendants represented to Mr. Wilson on multiple occasions that Symbion and its affiliated

entities were 'American companies,' which they are not" (Complaint, ¶ 23); and that "Mr.
Wilson learned that many of the Statements made by the Defendants were false. . .[including] . . .
claims by the Defendants that Symbion was an 'American Company'" (Complaint, ¶ 36).  There
can be no doubt that Wilson made these false claims in a final effort to coerce and intimidate
Symbion Power LLC to continue paying him $20,000 a month without performing any services
for it, and in the hope that Symbion Power LLC would also agree to grant him the equity interest
in the company he had been demanding.

14.      Annexed hereto as Exhibits A, B and C, respectively, are true and correct copies
of Certificates of Good Standing, each dated September 11, 2015, issued by the Delaware
Secretary of State evidencing that Symbion Power Holdings LLC and Symbion Power LLC are
Delaware limited liability corporations in good standing, and a Certificate evidencing that
Symbion Power LLC was organized in 2009 in Delaware as a successor to the original Symbion
Power LLC, which was a Nevada LLC formed in 2005, at the time Symbion was founded by
Paul Hinks.  The foregoing documents establish beyond dispute that Symbion Power LLC is and
always has been an "American Company," and that Wilson's claims that it is not are utterly
unfounded.

**FIRST AFFIRMATIVE DEFENSE**

1.      The Complaint, in whole or in part, fails to state a cause of action upon which
relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

2.      Plaintiff has substantially breached all agreements upon which Plaintiff's claims
are based.

**THIRD AFFIRMATIVE DEFENSE**

3.      Plaintiff is barred from bringing this action by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

4.      Plaintiff is barred from bringing this action by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

5.      Plaintiff is barred from bringing this action by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

6.      Plaintiff is barred from bringing this action by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Plaintiff is barred, in whole or in part, from bringing this action by the relevant statutes of limitations.

## EIGHTH AFFIRMATIVE DEFENSE

8.      Symbion Power LLC incorporates herein all allegations stated in its counterclaims below.

## NINTH AFFIRMATIVE DEFENSE

9.      Plaintiff is barred from bringing this action due to his renunciation of the contract he had with Symbion Power LLC which effectively terminated it.

## RESERVATION OF RIGHTS

10.      Symbion Power LLC reserves the right to plead any further affirmative defenses, cross-claims, counterclaims and/or third-party claims as may be warranted by further investigation and discovery.

## COUNTERCLAIM AGAINST PLAINTIFF AND COUNTERCLAIM-DEFENDANT JOSEPH WILSON

Symbion Power LLC hereby asserts the following counterclaim against Plaintiff and Counterclaim against Defendant Joseph Wilson.

**FIRST CAUSE OF ACTION IN COUNTERCLAIM AGAINST PLAINTIFF AND
COUNTERCLAIM-DEFENDANT JOSEPH WILSON
(Breach of Contract)**

11.     Symbion Power LLC incorporates by reference the allegations of paragraphs 1
through 14 of the Additional Facts set forth above as if fully set forth herein.

12.     As set forth above, Wilson has failed and refused to properly perform services in
required by his contractual duties.

13.     By reason of Wilson's breaches, Symbion Power LLC has been damaged, and is
entitled to compensatory damages from in an amount to be determined at trial.

**SECOND CAUSE OF ACTION IN COUNTERCLAIM AGAINST PLAINTIFF AND
COUNTERCLAIM-DEFENDANT JOSEPH WILSON
(Fraud)**

14.     Symbion Power LLC incorporates by reference the allegations of paragraphs 1
through 14 of the Additional Facts Set forth above as if fully set forth herein.

15.     As set forth above, in or about June 2009, Wilson introduced Robert Cabelly to
Symbion Power LLC and intentionally induced it to enter into an agreement to employ Cabelly
by knowingly making fraudulent representations of material fact and fraudulent omissions of
material fact concerning Cabelly's capacities and abilities to perform the services required by his
employment agreement with Symbion Power LLC, which fraudulent representations and
omissions Symbion Power LLC relied on and caused it to enter into an employment agreement
with Cabelly that he did not have the capacity or ability to perform.

16.     By reason of the foregoing, Symbion Power LLC has been damaged, and is
entitled to compensatory damages from Wilson in an amount to be determined at trial.

**THIRD CAUSE OF ACTION IN COUNTERCLAIM AGAINST PLAINTIFF AND
COUNTERCLAIM-DEFENDANT JOSEPH WILSON**
**(Economic Duress)**

17.     Symbion Power LLC incorporates by reference the allegations of paragraph 1

through 14 of the Additional Facts set forth above as if fully set forth herein.

18.     Wilson made repeated threats to "destroy" Symbion Power LLC and to otherwise

damage it by communicating "acrimonious" false and defamatory statements to third parties if

Symbion Power LLC exercised its right to terminate Wilson's consulting agreement and

terminated payment of his fees, though Wilson's agreement with Symbion Power LLC was at

will and could be terminated at any time.  The false and defamatory statements to third parties

Wilson threatened to make and did make included statements that Symbion Power LLC was not

an "American Company," which Wilson knew or should have known was not true.

19.     The foregoing threats constituted economic duress, and caused Symbion Power

LLC to continue paying Wilson his monthly fees, though it had no obligation to do so.

20.     Wilson made the foregoing threats with the intention of wrongfully coercing

Symbion Power LLC to continue such payments to Wilson and to confer other benefits on

Wilson, though Symbion Power LLC had no obligation to do so.

21.     By reason of the foregoing, Symbion Power LLC has been damaged, and is

entitled to compensatory damages from Wilson in an amount to be determined at trial.

**WHEREFORE**, Defendant and Counterclaimant Symbion Power LLC demands

judgment dismissing Plaintiff's Complaint and awarding it relief on its Counterclaim as follows:

A.      For judgment on its first cause of action in counterclaim in an amount to be
        determined at trial, plus interest and costs;

B.      For judgment on its second cause of action in counterclaim in an amount to be
        determined at trial, plus interest and costs;

C.    For judgment on its third cause of action in counterclaim in an amount to be

determined at trial, plus interest and costs;

D.    Interest, costs and expenses, including, but not limited to, attorney's fees and

disbursements incurred in connection with this action; and

E.    Such further relief as the Court deems just and proper.

Dated:   September 14, 2015              Respectfully submitted,

                                         MONTGOMERY & ANDREWS, P.A.

                                         By:  ___/s/ Stephen S. Hamilton_____
                                              Stephen S. Hamilton
                                              Lucas P. Conley
                                         Post Office Box 2307
                                         Santa Fe, New Mexico 87504-2307
                                         (505) 982-3873

                                         *Attorneys for Defendant and Counterclaimant
                                         Symbion Power LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2015, a true and correct copy of the foregoing was served via the Court's electronic system and via U.S. First Class Mail, postage prepaid, on the following counsel of record:

Brian Egolf
Egolf + Ferlic + Day, LLC
128 Grant Avenue, Third Floor
Santa Fe, New Mexico 87501
Brian@EgolfLaw.com

*Attorneys for Plaintiff*

                                         /s/ Stephen S. Hamilton_____
                                         Stephen S. Hamilton

19884/4/3341089.1

18

# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT "SYMBION POWER HOLDINGS LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE NOT HAVING BEEN CANCELLED OR REVOKED SO FAR AS THE RECORDS OF THIS OFFICE SHOW AND IS DULY AUTHORIZED TO TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF FORMATION, FILED THE TWENTY-NINTH DAY OF JUNE, A.D. 2009, AT 2:29 O`CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SYMBION OVERSEAS PROJECTS LLC" TO "SYMBION POWER HOLDINGS LLC", FILED THE SEVENTEENTH DAY OF JULY, A.D. 2009, AT 5:10 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "SYMBION POWER HOLDINGS LLC".

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

4704054  8310

SR# 20150094147

You may verify this certificate online at corp.delaware.gov/authver.shtml

**EXHIBIT A**

Authentication: 10035219

Date: 09-11-15

# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THAT "SYMBION POWER LLC" IS DULY FORMED

UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND

HAS A LEGAL EXISTENCE NOT HAVING BEEN CANCELLED OR REVOKED SO FAR

AS THE RECORDS OF THIS OFFICE SHOW AND IS DULY AUTHORIZED TO

TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF FORMATION, FILED THE TWENTY-FOURTH DAY OF

NOVEMBER, A.D. 2009, AT 6:37 O`CLOCK P.M.

CERTIFICATE OF CONVERSION, FILED THE TWENTY-FOURTH DAY OF

NOVEMBER, A.D. 2009, AT 6:37 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID

CERTIFICATE IS THE ONLY PAPER OF RECORD, THE LIMITED LIABILITY

COMPANY IN QUESTION NOT HAVING FILED AN AMENDMENT NOR HAVING

MADE ANY CHANGE WHATSOEVER IN THE ORIGINAL CERTIFICATE AS FILED.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE

BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

4757461  8315

SR# 20150094139

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 10035218

Date: 09-11-15

**EXHIBIT B**

# Delaware

PAGE   1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND
CORRECT COPY OF THE CERTIFICATE OF CONVERSION OF A NEVADA
LIMITED LIABILITY COMPANY UNDER THE NAME OF "SYMBION POWER LLC"
TO A DELAWARE LIMITED LIABILITY COMPANY, FILED IN THIS OFFICE ON
THE TWENTY-FOURTH DAY OF NOVEMBER, A.D. 2009, AT 6:37 O'CLOCK
P.M.

4757461   8100V

091046968

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 7663973

DATE: 11-25-09

**EXHIBIT C**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:50 PM 11/24/2009*
*FILED 06:37 PM 11/24/2009*
*SRV 091046968 - 4757461 FILE*

STATE OF DELAWARE
CERTIFICATE OF CONVERSION
FROM A NON-DELAWARE LIMITED LIABILITY COMPANY TO
A DELAWARE LIMITED LIABILITY COMPANY PURSUANT TO
SECTION 18-214 OF THE LIMITED LIABILITY ACT

1.) The jurisdiction where the Non-Delaware Limited Liability Company first formed is Nevada

2.) The jurisdiction immediately prior to filing this Certificate is Nevada

3.) The date the Non-Delaware Limited Liability Company first formed is July 5, 2005

4.) The name of the Non-Delaware Limited Liability Company immediately prior to filing this Certificate is Symbion Power LLC

5.) The name of the Limited Liability Company as set forth in the Certificate of Formation is Symbion Power LLC

IN WITNESS WHEREOF, the undersigned have executed this Certificate on the 24th day of November, A.D. 2009

By: _____
Authorized Person

Name: _____
Print or Type   Paul Hinks